IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BRIKARY KIRARY NASH,                                                                                    PLAINTIFF

v.                    Civil No. 4:22-cv-04014-SOH-BAB

JAILER PRESTON OVERSTREET,
Little River County Detention Center,                                                                 DEFENDANT.

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by Plaintiff Brikary Kirary Nash ("Nash") pursuant to 42 U.S.C. § 1983. Nash proceeds *pro se* and *in forma pauperis* (IFP). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purposes of making a Report and Recommendation on Defendant's Motion for Summary Judgment. (ECF No. 19). Nash has filed a response to the Motion. (ECF No. 32). This matter is therefore now ripe for the Court's consideration. And for the reasons outlined below, the undersigned RECOMMENDS that the Motion for Summary Judgment, (ECF No. 19), be DENIED IN PART and GRANTED IN PART.

**I. BACKGROUND**

On December 26, 2021, Nash was a pretrial inmate at the Little River County Detention Center ("LRCDC"). (Amend. Comp. at p. 3 (ECF No. 7)).[1] At some point during the day,

---

[1] Nash was twice instructed that if he submitted an affidavit in response to the Defendant's Motion for Summary Judgment, the affidavit must be either: (1) sworn and subscribed to by a notary public; or (2) executed under penalty of perjury, as provided for by 28 U.S.C. § 1746. (ECF Nos. 22 & 25). Nash's response does neither. (ECF No. 32). Because Nash verified his Amended Complaint under penalty of perjury, however, it is the equivalent of an affidavit and can serve as his response to the Defendant's Motion for Summary Judgment under Rule 56(e) of the Federal Rules of Civil Procedure. *Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (citing *Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984)). The Court, then, considers only the Amended

1

Defendant Preston Overstreet ("Overstreet") directed Nash to return to his cell for lock down. *Id.* at p. 4. The parties dispute what happened next. On motion for summary judgment, however, the Court must take the non-movant's version of events as true unless it is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, the Court first considers Nash's version.

### A. Nash's version.

According to Nash, when Overstreet directed him to return to his cell for lockdown, he requested a grievance form from her. (Amend. Comp. at p. 4 (ECF No. 7)). When she did not bring him a grievance form as promised, he started pressing the intercom button, but no one answered so he continued pressing the button. *Id.* Rather than answer the intercom, Nash claims that Overstreet came to his cell, opened the cell door, and told him to press the intercom button again. *Id.* Nash complied, and Overstreet sprayed him twice in the eyes with pepper spray. *Id.*

### B. Overstreet's version.

Overstreet's affidavit paints an entirely different picture. According to Overstreet, after he returned to his cell, Nash repeatedly pressed the intercom button and kicked his cell door. (Overstreet Aff. ¶ 5, Exh. B (ECF No. 19-2)). Overstreet claims that she repeatedly used the intercom system to ask Nash what was going on and to advise him to calm down, but to no avail. *Id.* at ¶ 6. Overstreet contends that an inmate in a different cell then began to mirror Nash's behavior by also pushing the intercom button and kicking his own cell door. *Id.* at ¶ 7. Overstreet became "concerned [] that Mr. Nash could become violent or start a riot." *Id.* According to

---

Complaint in considering whether there are any genuine disputes of material fact that would preclude granting summary judgment. *Id.* The Court treats as argument Plaintiff's response to Defendant's Motion for Summary Judgment.

Overstreet, when she approached Nash in his cell to address the behavior, "he again failed to follow commands" so she pepper sprayed him. *Id.* at ¶ 8. Overstreet claims that she pepper sprayed him again after a few seconds when "Nash came towards [her]" to "prevent him from coming closer." *Id.* at ¶ 9.

Although it appears there may be video of the incident, (Incident Rep. (ECF No. 19-2)), no party submitted the video for the Court's consideration.

## II. LEGAL STANDARD

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001). In response, the nonmoving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

## III. ANALYSIS

Nash names Overstreet as a defendant in her individual and official capacity. Overstreet

requests summary judgment with respect to both claims. Each claim is addressed, in turn, below.

### A. Individual Capacity Claim

Overstreet contends that she is entitled to qualified immunity because her use of force against Nash was a reasonable attempt to maintain order in the jail. (Def. Br. at p. 2 (ECF No. 20)).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Smith v. Conway County*, 759 F.3d 853, 858 (8th Cir. 2014) (citation, quotation marks, and alterations omitted). The second "asks whether the right in question was clearly established at the time of the violation." *Id*. (citation and quotation marks omitted).

#### 1. Constitutional Right

Turning first to the question of whether Overstreet's use of force violated Nash's constitutional rights, Overstreet views Nash's claims under the Eighth Amendment's "cruel and unusual punishment" standard. (Def. Br. at p. 3 (ECF No. 20)). This is the wrong standard. As a pretrial detainee, this Court analyzes Nash's excessive-force claim under the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To prevail on such a claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. Courts, however, cannot apply the "objectively unreasonable" standard mechanically. *Id.* at 397. "Rather, objective reasonableness turns on the facts and circumstances of each particular case." *Id.* (quoting *Graham*, 490 U.S. at 396). A court must

4

adopt "the perspective of a reasonable officer on the scene" and base its analysis on "what the officer knew at the time," without "the 20/20 vision of hindsight." *Id.*

In evaluating the reasonableness of a use of force, courts consider:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397.

In this case, there is considerable disagreement regarding the circumstances leading up to Overstreet's use of force in first deploying the pepper spray and then in her decision to deploy it again.[2] As it must, the Court accepts as true Nash's version of events. According to Nash, he kept pressing the intercom button because no one was answering it. (Amend. Comp. at p. 4 (ECF No. 7)). Nash contends that rather than answer it, Overstreet came to his cell, opened the door, and told him to press the intercom button again. *Id.* When he complied, Overstreet deployed pepper spray in his eyes, twice. *Id.* Applying *Kingsley* to these facts, the Court finds, that an issue of material fact exists as to whether Overstreet used excessive force in violation of the Due Process Clause.

First, there was no apparent need to use force in the first place. Although Nash was

---

[2] Overstreet appears to contend that Nash's failure to characterize Overstreet's use of force as "excessive" is somehow detrimental to Nash's claim. (Def. Br. at p. 4 (ECF No. 20)). This Court is not persuaded. Courts are to liberally construe *pro se* filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction means that the court construes a pro se litigant's filing "in a way that permits the [litigant's] claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). With this in mind, the Court understands Nash as claiming that Overstreet used excessive force against him when she twice deployed pepper spray in his face—purportedly without provocation—even though his claims do not specifically assert that this use of force was "excessive."

repeatedly hitting the intercom button, this conduct, by itself, does not appear to be aggressive or violent. By contrast, Overstreet's response—spraying Nash in the eyes with pepper spray—was substantial. According to Nash, moreover, Overstreet never ordered him to stop pressing the intercom button. (Comp. at p. 4 (ECF No. 7)). Therefore, by continuing to press the button, he was not failing to comply with her commands. Indeed, according to Nash, Overstreet sprayed him in the eyes with pepper spray after he followed her directions and pressed the button again. *Id.* This factor weighs in favor of Nash. Further, Nash claims that being pepper sprayed has negatively affected his vision. *Id.* at p. 7. Third, Overstreet did not make any efforts to temper the use of force by, for example, answering the intercom. Indeed, according to Nash, the use of force was entirely unprovoked. *Id.* at p. 6. The second and third *Kingsley* factors, therefore, also weigh in favor of allowing Nash's claim of excessive force to survive summary judgment.

With respect to the fourth and fifth factors, the severity of the security concern and the threat reasonably perceived by Overstreet were minimal. It is undisputed that the inmates were locked in their cells at the time of the incident. *See* (Amend Comp. (ECF No. 7)); *cf.* (Aff. of Overstreet, Exh. B (ECF No. 19-2)). Although Overstreet claims that Nash's behavior prompted another inmate to also repeatedly press the intercom button and kick his cell door, it appears that Nash was in the "cell one" area of the detention center whereas this other unidentified inmate was in "cell three." (Aff. of Overstreet ¶¶ 3, 7, Exh. B (ECF No. 19-2)). Thus, any perceived threat caused by Nash using (and perhaps abusing) the intercom system was mitigated by the fact that the inmates were locked down at the time and in separate cells. Finally, according to Nash, he was not resisting or failing to comply with Overstreet's directives. (Amend Comp. (ECF No. 7)). Thus, in sum, assuming, as the Court must, that Nash's version of events is true, Overstreet acted

without provocation in spraying him in the eyes with pepper spray. Accordingly, for the purposes of summary judgment, the Court finds that an issue of material fact exists as to whether Overstreet violated Nash's Fourteenth Amendment right to be free from excessive force as a pretrial detainee.

### 2. Clearly Established Right

The next question in the qualified immunity analysis is whether that right was clearly established at the time of the incident, or on December 26, 2021. The Court finds that it was.

A "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Tatum v. Robinson*, 858 F.3d 544, 547 (8th Cir. 2017) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2012)). But "there is no requirement that [the plaintiff] must find a case where the very action in question has previously been held unlawful, so long as existing precedent [has] placed the statutory or constitutional question beyond debate." *Karels v. Storz*, 906 F.3d 740, 747 (8th Cir. 2018) (cleaned up).

At the time of the incident, it was clearly established that using force against a pretrial inmate who was not actively resisting or acting aggressively was unconstitutional. *See Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014) (finding that it was clearly established that using force against pretrial inmates who "did not resist or otherwise act aggressively" was unconstitutional) (listing cases)); *Smith v. Conway Cnty., Ark.*, 759 F.3d 853, 860-61 (8th Cir. 2014) (concluding that prisoner's right to be free from being tased a second time was clearly established where prisoner was not violent and clearly trying to comply with directives at the time of the second tase). To be sure, Overstreet disputes Nash's version of events. However, for the purposes of summary judgment, the Court must accept this version as true. To this end, at a minimum, there is a genuine

7

issue of material fact precluding summary judgment on Nash's individual capacity claim against Overstreet for her use of force against him on December 26, 2021. Accordingly, the Court recommends that Overstreet's Motion for Summary Judgment as to this claim be DENIED.

### B. Official Capacity Claim

This leaves Nash's official capacity claim against Overstreet. The Court must treat this claim as a claim against her employer, or, in this case, Little River County. *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (quoting *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (internal quotations and citations omitted)). And a municipality like Little River County is only liable under Section 1983 when "the execution of the government's policy or custom . . . inflicts the injury." *Monell v. Dep't. of Social Srvs.*, 436 U.S. 658, 694-95 (1978)).

"When a plaintiff can point to a municipal policy that either 'violates federal law, or directs an employee to do so,' 'no evidence is needed other than a statement of the municipal policy and its exercise' to establish a constitutional violation." *Brewington*, 902 F.3d at 801 (citing *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389, 90 (8th Cir. 2007) (additional citations omitted)). "But when a plaintiff alleges an unwritten or unofficial policy, there must be evidence of . . . a practice, so permanent and well-settled so as to constitute a accustom, that existed." *Id.* (citing *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (additional citations omitted)).

Here, Nash fails to point to a policy directing Overstreet—or anyone else—to violate the federal constitution or federal law. *See* (Amend. Comp. (ECF No. 7)). Indeed, Nash presents no admissible evidence controverting the express policy of the Little River Detention Center authorizing "only that force and restraint necessary to control an inmate who displays a violent or threatening behavior." (Def.'s Mot. Summ. J. at p. 3, Ex. A-1 (ECF No. 19-1)). Thus, for Nash's

official capacity claim against Overstreet to survive summary judgment, he must establish that the Detention Center has an unofficial policy or custom to use excessive force against pretrial inmates.

To do so, Nash must demonstrate: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that the plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016)). The pattern of unconstitutional conduct, moreover, "must be so pervasive and widespread as to have the effect and force of law." *Brewington*, 902 F.3d at 801 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (quotations omitted)).

In this case, Nash does not assert any facts suggesting the "existence of a widespread, persistent pattern of constitutional misconduct" in deploying excessive force against pretrial inmates. *See* (Amend. Comp. (ECF No. 7)).   One incident, as alleged here, moreover, is generally insufficient to satisfy this standard. *See Smith v. Watkins*, 159 F.3d 1137, 1138 (8th Cir. 1998) (observing that the court recently held that "two specific complaints and various rumors about an officer were not sufficient to establish a policy or custom of condoning unconstitutional conduct") (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)); *see also Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) ("Generally, an isolated incident of alleged police misconduct, such as [Plaintiff] alleges occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983.").   Thus, there is no material issue of fact regarding Nash's official capacity claim.  The Court, therefore, recommends that Defendant's Motion for

9

Summary Judgment with respect to the claim against Overstreet in her official capacity be granted.

## IV. CONCLUSION

In sum, this Court recommends that Defendant's Motion for Summary Judgment, (ECF No. 19), be **GRANTED in part, and DENIED in part.** Specifically,

1. Summary Judgment as to Plaintiff Brikary Nash's excessive-force claim against Defendant Preston Overstreet in her individual capacity should be **DENIED.**

2. Summary Judgment as to Plaintiff Brikary Nash's excessive-force claim against Defendant Preston Overstreet in her official capacity should be **GRANTED**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 8th day of June 2023.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE